UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

42 NORTH, LLC,

    Plaintiff,

v.

BRAD DOUGLAS, LLC, et al.,

    Defendants.
_____/

Case No. 1:20-cv-188

Hon. Hala Y. Jarbou

## **OPINION**

Plaintiff 42 North, LLC brought this action against Brad Douglas, LLC (d/b/a Brad Douglas Design), and its owner, Brad Tilma. 42 North claims that Defendants violated its copyrights in architectural drawings that it prepared for Michelle Franks (who is no longer a party to this case). Before the Court is Defendants' motion for partial summary judgment on Count IX of the complaint (ECF No. 32). For the reasons herein, the Court will grant the motion.

### I. BACKGROUND

**A. Facts**

According to the parties' joint statement of undisputed facts (ECF No. 76), Franks hired 42 North in October 2017 to create architectural designs for a new home that Franks intended to build in Ada, Michigan. 42 North provided its design drawings (the "Design Drawings," ECF No. 77-8) to Franks in May 2018. About a month later, Franks notified 42 North that she was terminating their relationship. Franks then hired Defendant Brad Douglas, LLC ("BD") to create a design for her new home. In April 2019, BD completed a set of construction drawings that it submitted to Ada Township for the purpose of obtaining a building permit (the "Permit Drawings").

The Permit Drawings "are not identical to or a copy/replica" of the Design Drawings. (Joint Statement ¶ 10.) Tilma acknowledged that he received a physical copy of 42 North's designs from Franks. (Tilma Dep. 22-24, ECF No. 77-3.) However, he testified that he created a hand drawing of the floorplan for Franks's home that he later used as the basis for the Permit Drawings. (*Id.* at 78.) Similarly, in an affidavit, he contends that he created the Permit Drawings independently; they were not a copy or replica of the Design Drawings. (Tilma Aff. ¶ 14, ECF No. 74-3.)

In December 2019, 42 North obtained a copyright registration for the Design Drawings from the U.S. Copyright Office.

### B. Claim

Defendants seek summary judgment on Count IX of the complaint, which claims that Defendants violated the Digital Millennium Copyright Act (DMCA), specifically 17 U.S.C. § 1202, by removing or omitting 42 North's "copyright management information" from the Design Drawings for the purpose of facilitating or concealing infringement. (Compl. ¶ 55, ECF No. 1.)

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Summary judgment is not an opportunity for the Court to resolve factual disputes. *Id.* at 249. The Court "must shy away from weighing the evidence and instead view all the facts in the light most favorable to the nonmoving party and draw all justifiable inferences in their favor." *Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 410 (6th Cir. 2021).

## III. ANALYSIS

As explained in its title, 17 U.S.C. § 1202 addresses the "[i]ntegrity of copyright management information." *See id.* Copyright management information ("CMI") is "any of the following information conveyed in connection with copies . . . of a work . . . , including in digital form":

> (1) the title and other information identifying the work, including the information set forth on a notice of copyright.
>
> (2) The name of, and other identifying information about, the author of a work.
>
> (3) The name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright.
>
> . . .

17 U.S.C. § 1202(c).[1]

Section 1202(a) prohibits a person from "knowingly and with the intent to induce, enable, facilitate, or conceal infringement," providing or distributing CMI "that is false." *Id.* § 1202(a)(1). Section § 1202(b) prohibits a person from "intentionally remov[ing] or alter[ing]" CMI, knowing or "having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title." *Id.* § 1202(b)(1).

Here, 42 North apparently contends that the CMI at issue is its name and logo on the Design Drawings identifying it as the author of those drawings. It claims that Defendants omitted this information from the Permit Drawings in violation of § 1202(b). And it apparently claims that Defendants provided false CMI by using BD's name and logo on the Permit Drawings, in violation of § 1202(a).

---

[1] The definition of CMI includes other types of information that are not relevant here.

### A. Application of the DMCA to Physical Works

Defendants argue that § 1202 does not apply here because CMI only refers to information that is subject to technological management. They contend it does not apply to physical works or to physical information, such as the name or logo printed on the Design Drawings. Defendants rely on *Textile Secrets International, Inc. v. Ya-Ya Brand Inc.*, 524 F. Supp. 2d 1184 (C.D. Cal. 2007), in which a district court examined the legislative history of the DMCA, and of 17 U.S.C. § 1202 in particular, and concluded that its intent is "'to protect automated systems which protect and manage copyrights'" in order to "facilitate electronic and Internet commerce." *Id.* at 1202-03 (quoting *IQ Grp., Ltd. v. Wiesner Publishing, LLC*, 409 F. Supp. 2d 587, 593 (D.N.J. 2006)). Consequently, it does not protect information in physical form.

Indeed, the term "copyright management information" is a highly unusual way to describe the title of a work and its author as printed on a physical copy of the work. As the court in *Textile Secrets* explained, that term originated from a white paper prepared by the Clinton Administration to make recommendations for modernizing copyright law that would address "the needs of the global information society." *Id.* at 1196. The paper explained that CMI would "serve as a kind of license plate for a work on the information superhighway, from which a user may obtain important information about the work." *Id.* (quotation marks omitted). The paper included draft versions of §§ 1201 and 1202 that are similar to what Congress later adopted. In support of these draft provisions, the paper explained that systems were being developed to manage copyrighted works, including "tracking and monitoring uses of copyrighted works as well as licensing of rights and indicating attribution, creation and ownership interests." *Id.* at 1197. The paper explained that, "[t]o implement these rights management functions, [CMI] will likely be included in digital versions of a work . . . to inform the user about the authorship and ownership of a work . . . as well as to indicate authorized uses of the work." *Id.* In other words, the term "management" in CMI

4

originally referred to the use of automated technological systems to manage and track the use of digital works.

The holding in *Textile Secrets* is also supported by the statutory and legislative context of § 1202. The section preceding it prohibits the "circumvention of technological measures" that "effectively control access" to a copyrighted work. 17 U.S.C. § 1201(a). The white paper proposed this section in conjunction with § 1202, and both were enacted in some form as part of the DMCA. As proposed in the white paper, § 1201 governs protections on technological access to copyrighted works while § 1202 promotes the technological management of copyrighted works. Both provisions facilitate electronic commerce by offering greater protection for digital works and for technological methods to manage and prevent their unauthorized use. *See* U.S. Copyright Office, *The Digital Millennium Copyright Act of 1998* (Dec. 1998), https://www.copyright.gov/legislation/dmca.pdf (explaining that §§ 1201 and 1202 "serve as technological adjuncts to the exclusive rights granted by copyright law" and "provide legal protection that the international copyright community deemed critical to the safe and efficient exploitation of works on digital networks"). Defendants' more narrow interpretation of § 1202 fits that goal by limiting CMI to digital information manageable by automated systems. In contrast, 42 North's broader interpretation of § 1202 extends it to circumstances like those here, which have no discernible connection to digital networks or electronic commerce.

At least one prominent scholar agrees with the holding in *Textile Secrets*. *See* 5 William F. Patry, *Patry on Copyright* § 16A:3.60 (2024) ("Does Section 1202 apply only to works in digital form? The plain words of the statute do not so limit it, although read contextually and in light of its legislative history, the provision is so limited, not applying to analog works."). But a number of courts disagree with that holding. Those courts focus almost exclusively on the "plain language"

5

of the CMI definition, which is not expressly limited to digital works or to information manageable by automated systems. *See, e.g.*, *Murphy v. Millennium Radio Grp. LLC*, 650 F.3d 295, 302-05 (3d Cir. 2011); *Carter v. Pallante*, 256 F. Supp. 3d 791, 801 n.6 (N.D. Ill. 2017); *Agence France Presse v. Morel*, 769 F. Supp. 2d 295, 305-06 (S.D.N.Y. 2011); *Associated Press v. All Headline News Corp.*, 608 F. Supp. 2d 454, 461-62 (S.D.N.Y. 2009); *Interplan Architect, Inc. v. C.L. Thomas, Inc.*, No. CIV.A.408CV03181, 2009 WL 6443117, at *5 (S.D. Tex. Nov. 13, 2009). Those courts also note that the CMI definition refers to certain types of information about a work, "including [such information] in a digital form." 17 U.S.C. § 1202(c). The latter phrase implies that CMI also includes information in a non-digital form.

Focusing solely on the text of § 1202 to determine its meaning is questionable in light of the Supreme Court's admonition that "the plainness or ambiguity of statutory language is determined not only by reference to the language itself, but as well by the specific context in which that language is used, and the broader context of the statute as a whole." *Yates v. United States*, 574 U.S. 528, 537 (2015) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)) (brackets omitted). None of the court decisions cited above pay much attention to the statutory context or legislative history of 17 U.S.C. § 1202. And none of them grapple with Congress's choice to use the novel and unusual term "copyright *management* information," which itself plainly implies that the information at issue is intended for use in the "management" of a copyright. It is difficult to see how removal of the title or author printed on the copy of a physical work hinders the management of the copyright for that work. It is also difficult to see what concerns Congress was addressing by prohibiting the removal of that information from a physical work. Indeed, if Congress's concerns underlying § 1202 extended to all types of copyrighted works (both digital and physical), it would have made more sense for Congress to amend the existing Copyright Act

than to enact a separate provision as part of the DMCA, a statute ostensibly aimed at a narrower subject. In short, the novel concept of "copyright management" in the text of § 1202 points to a particular intent by Congress that is not discernible by focusing exclusively on the individual words that make up § 1202. The legislative history and statutory context provide crucial insight into the meaning of that concept. That history and context support the holding in *Textile Secrets* and the interpretation offered by Defendants rather than the interpretation offered by 42 North.

The Court need not definitively resolve the parties' interpretive disagreement, however, because 42 North's DMCA claim fails for another reason, as discussed below.

### B. Alteration or Removal of CMI

Defendants argue that there is no evidence that they altered or removed the CMI from 42 North's copyrighted work, as prohibited by § 1202(b), let alone that they did so with intent to induce, enable, facilitate, or conceal infringement. Instead, they created a different work. As Tilma states in his affidavit, he created the Permit Drawings independently from the Design Drawings. (Tilma Aff. ¶ 14.) In other words, he did not copy the Design Drawings.

CMI is information conveyed in connection with copies of the copyrighted work. 42 North apparently relies on Defendants' creation and distribution of the Permit Drawings as evidence of alteration or removal of CMI, but Defendants note there is no genuine dispute that the Permit Drawings are different from the Design Drawings. The parties agree that the Permit Drawings are different. To be liable under § 1202(b) for altering or removing the CMI of a work by making a copy of the work, Defendants argue that the copy must be identical to the original. *See Faulkner Press, LLC v. Class Notes, LLC*, 756 F. Supp. 2d 1352, 1359 (N.D. Fla. 2010) ("An action for removal of copyright management information requires the information to be removed from a plaintiff's product or *original* work.") (emphasis added). But here, the alleged copy of 42 North's work is not identical to the original, so § 1202(b) does not apply to that copy.

A court reached a similar conclusion in *Frost-Tsuji Architects v. Highway Inn, Inc.*, No. 13–00496 SOM/BMK, 2014 WL 5798282 (D. Haw. Nov. 7, 2014). There, the plaintiff created architectural designs and sent them to its client, Highway Inn. *Id.* at *2. Highway Inn then hired a new architect who created a design that was "virtually identical" to one created by the plaintiff. *Id.* The court held that this evidence was not adequate to prove a violation of § 1202(b) because redrawing the original plans would not involve the removal or alteration of CMI in the original work. *Id.* at *5. The Court reasoned that "[t]he physical act of removal is not the same as basing a drawing on someone else's work. Reliance on another's work is insufficient to support a claim of removal of copyright management information." *Id.* at *6; *accord Kik Kara Corp. v. W. Stone & Metal Corp.*, No. CV 20-1931-DMG, 2020 WL 5991503, at *6 (C.D. Cal. Aug. 14, 2020) ("[E]ven where the underlying works are similar, courts have found that no DMCA violation exists where the works are not identical.") (citing cases).

Similarly, Defendants argue that the evidence here shows, at most, that Defendants created a work *similar* to the Design Drawings, which does not suffice to infer that they altered or removed CMI from the Design Drawings. *See Shell v. Lautenschlager*, No. 1:15CV1757, 2017 WL 4919206, at *9 (N.D. Ohio Oct. 31, 2017) ("Simply demonstrating copyright infringement does not in and of itself prove that a defendant has removed CMI from a work.") (citing *Frost-Tsuji*).

42 North responds that as long as Defendants relied on the Design Drawings to create the Permit Drawings, and did not include 42 North's CMI in the Permit Drawings, Defendants' conduct constitutes alteration or removal of the CMI whether or not the Permit Drawings are the same as the Design Drawings. 42 North relies on several cases for its point. None of them are persuasive. Most of them do not support 42 North's argument because they involved exact copies of the original copyrighted work. *See Agence France Presse*, 769 F. Supp. 2d at 305 (copy of

8

digital photographs); *Boatman v. U.S. Racquetball Assoc.*, 33 F. Supp. 3d 1264, 1274 (D. Colo. 2014) (same); *Design GC2 Inc. v. Int'l Game Tech. PLC*, 255 F. Supp. 3d 812, 818 (N.D. Ill. 2017) (copy of digital artwork); *Monotype Imaging, Inc. v. Bitstream, Inc.*, No. 03C4349, 2005 WL 936882, at *8 (N.D. Ill. Apr. 21, 2005) (copy of software). Those cases are consistent with Defendants' argument.

Another two decisions identified by 42 North recited a principle supporting Defendants' position. *See Design Basics, LLC v. Landmark Cmtys., Inc.*, No. 1:17-cv-449, 2019 WL 3944437, at *12 (S.D. Ohio Aug. 21, 2019) ("Copying or re-drawing virtually identical designs, but not including the original CMI, is not the same as altering or removing the CMI from the original design."); *Design Basics, LLC v. Ashford Homes, LLC*, No. 1:17-cv-273, 2018 WL 6620438, at *16 (S.D. Ohio Dec. 18, 2018) (same). However, those decisions did not apply that principle. Instead, they summarily concluded that the defendants' creation of architectural drawings that were "substantially similar" to the plaintiffs' drawings created an issue of fact as to liability under the DMCA for altering or removing the CMI in the original works. *Design Basics*, 2019 WL 3944437, at *8, *12; *Design Basics*, 2018 WL 6620438, at *16. Those decisions are not persuasive.

Similarly, in *Preston Wood & Assocs., LLC v. RZ Enters. USA, Inc.*, No. 4:16-cv-1427, 2018 WL 2059244 (S.D. Tex. May 3, 2018), the court allowed a claim under § 1202 to proceed past the summary judgment stage where the defendant contended that it created its own materials "from scratch" rather than copying the plaintiff's architectural drawings. *See id.* at *2. That court provided little reasoning for its decision, however, and this Court finds it unpersuasive.

The holding in *Frost-Tsuji* is consistent with the statutory definition of CMI, which means "information conveyed in connection with copies . . . of a work," such as the title, author, copyright

9

owner, and terms and conditions for use of the work, among other things. *See* 17 U.S.C. § 1202(c). The thrust of this provision is that the rights holder can attach certain information to its work that is then conveyed with copies of that *same* work. But in effect, 42 North is asking the Court to extend the CMI definition to a *derivative* work, which is a work "based upon" the original but different from it. *See* 17 U.S.C. § 101 (defining "derivative work"). 42 North would have the CMI definition apply to "information conveyed in connection with copies of a *derivative* work," which is not how the statute reads.

Extending § 1202(b) to these circumstances would encourage conduct that is at odds with the DMCA. 42 North apparently contends that, in order to comply with the DMCA, Defendants should have included 42 North's name and logo in the Permit Drawings, even though it is not disputed that 42 North did not author those particular drawings. But by doing so, Defendants would have provided potentially false or misleading information about the authorship or ownership of the Permit Drawings, thereby putting themselves at risk of violating § 1202(a), which prohibits providing or distributing false CMI. The Court is not persuaded that Congress intended such a result.

42 North mischaracterizes Defendants' position as requiring "direct" copying of the original work in order for § 1202(b) to apply. It surmises that, under such a strict standard, an individual could evade the DMCA by, for instance, retyping a novel verbatim and then omitting the CMI from the original novel. On the contrary, a verbatim copy of a novel is an exact copy of the original work. Thus, § 1202 would apply in that circumstance. *See All Headline News Corp.*, 608 F. Supp. 2d at 458, 461-62 (applying § 1202 to a defendant who copied the plaintiff's news stories by retyping and redistributing them without attribution to the plaintiff). The ultimate question is not *how* the work was copied, but whether the copy is a reproduction of the original

work.  Here, it is not disputed that Defendants' Permit Drawings were different from 42 North's Design Drawings.  No other evidence tends to show that Defendants removed or altered the CMI from copies of 42 North's original work.

Put another way, 42 North's name and logo were never "conveyed in connection with" the Permit Drawings.  The latter are not a "copy" of the Design Drawings; rather, they comprise a different work.  Thus, § 1202(b) did not prohibit Defendants' conduct with respect to the Permit Drawings.  Accordingly, the Court agrees with Defendants that 42 North's evidence is not sufficient to show removal or alteration of the CMI of the copyrighted work under § 1202(b).

**C. False CMI**

The same reasoning extends to 42 North's claim under § 1202(a), which prohibits the distribution or provision of false CMI.  There is no evidence that Defendants provided any false CMI for the Design Drawings because, even when the evidence is construed in 42 North's favor, it shows only that Defendants created and distributed a different work; it does not show that they made an exact copy of the Design Drawings and conveyed false CMI for 42 North's copyrighted work.  Putting BD's name, logo, or titles on the Permit Drawings was not false CMI because the Permit Drawings are different from the Design Drawings.

42 North contends that Defendants ignored its DMCA claim under § 1202(a) in their summary judgment motion.  However, Defendants seek summary judgment on 42 North's DMCA claim in its entirety.  Although Defendants' briefing focuses primarily on the alteration or removal of CMI under § 1202(b), they expressly argue there is no evidence that Defendants "removed altered, *falsified*, or in any way modified" the CMI of 42 North's copyrighted work.  (*See* Defs.' Summ. J. Br. 3, 6, ECF No. 74 (emphasis added).)  Falsified CMI is a reference to the prohibition in § 1202(a).  Defendants also quote the text of § 1202(a) in their brief.  (Defs.' Summ. J. Br. 5.) Thus, the Court is satisfied that Defendants raised the issue.

11

For the reasons above, the Court is not persuaded that there is sufficient evidence to create a genuine dispute of material fact as to 42 North's claim under § 1202(a).

## IV. CONCLUSION

For the foregoing reasons, 42 North has not established a genuine dispute of fact regarding its DMCA claims in Count IX of the complaint. Accordingly, the Court will grant Defendants' motion for summary judgment and dismiss Count IX with prejudice. The Court will enter an order consistent with this Opinion.

Dated: November 4, 2024         /s/ Hala Y. Jarbou
                                HALA Y. JARBOU
                                CHIEF UNITED STATES DISTRICT JUDGE